**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

MARVIN VACA,
on behalf of himself and other similarly
situated individuals,

                                                   Case No. 1:25-cv-4804 (AS)

               Plaintiff,

    v.

NEW YORK HEALTH &
HOSPITALS CORPORATION,
And DIVERSE LYNX, LLC,

               Defendants.

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR CONDITIONAL**
**CERTIFICATION OF AN FLSA COLLECTIVE**

---

David A. Cohen
**The Basil Law Group, P.C.**
125 West 31st Street
Suite 19-B
New York, NY 10001
917-994-9973
*Attorneys for Defendants*

# **TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT …………………………………………………………1

II. FACTS …………………..……………………….................................................3

III.  ARGUMENT ……………………………………………………………………..…6

    A.  Standard for Certification ...………………………………………………………6

    B.  Plaintiff Has Failed To Satisfy His Burden That the Potential
        Opt-Ins And Plaintiff Were Victims of a Common Unlawful Policy………………7

    C.  The Court Should Deny Conditional Certification to
        "HERRC Managers" ……. ………………………………………………………..12

    D.  Plaintiff's Proposed Notice is Inaccurate and Must Be Corrected ………………13

    E.  The Court Should Not Authorize Notice Via Text Message ……………………13

IV.  CONCLUSION ……………………………………………………….....................14

i

## TABLE OF AUTHORITIES

### Cases

Page

*Batten v. Citi Gen. Hardware, Inc.*,
    2025 U.S. Dist. Lexis 191674 (E.D.N.Y. Sept. 29, 2025) …………………………7,12

*Chong Suk Lee v. Nails & Spa Together, Inc.*,
    2025 U.S. Dist. Lexis 67673 (S.D.N.Y. April 9, 2025) …………………………10,11

*Guillen v. Marshalls of MA, Inc.*,
    750 F. Supp. 2d 469 (S.D.N.Y. 2010) ………………………………………………..6

*Jaworski v. Integra Dev. Grp., Inc.*,
    2021 U.S. Dist. Lexis 228031 (E.D.N.Y. Nov. 29, 2021) ……………………………7

*Lin v. Benihana Nat'l Corp.*,
    755 F. Supp. 2d 504 (S.D.N.Y. 2010) ………………………………………………..7

*Mendez v. Sweet Sam's Baking Co. LLC*,
    2017 U.S. Dist. Lexis 87060 (S.D.N.Y. May 23, 2019) ……………………………..14

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) …………………………………………………………..6

*Ortiz v. Consol. Edison Co. of N.Y., Inc.*,
    2025 U.S. Dist. Lexis 189473 (S.D.N.Y. Sept. 24, 2025) …………………………6,13

*Qing Gu v. T.C. Chikurin, Inc.*,
    2014 U.S. Dist. Lexis 53813 (E.D.N.Y. April 17, 2024) ……………………………7, 12

*Sanchez v. JMP Ventures, LLC*,
    2014 U.S. Dist. Lexis 14980 (S.D.N.Y. Jan. 27, 2014) ………………………………10

*Washington v. Green Trips Inc.*,
    2025 U.S. Dist. Lexis 263005 (E.D.N.Y. Dec. 19, 2025) ……………………………13

*Winfield v. Citibank, N.A.*,
    843 F. Supp. 2d 397 (S.D.N.Y. 2012) ………………………………………………..6,7

*Yang v, Asia Mkt. Corp.*,
    2018 U.S. Dist. Lexis 56847 (S.D.N.Y. April 3, 2018) ……………………………..10

**<u>Statutes</u>**

29 U.S.C. § 216(b) ……………………………………………………………………..6

## I.     PRELIMINARY STATEMENT

Plaintiff Marvin Vaca's motion for conditional certification should be denied on the grounds that Plaintiff cannot meet his burden that he and the potential opt-in plaintiffs were victims of a common policy or plan that violated the Fair Labor Standards Act ("FLSA").  In his Amended Complaint, Plaintiff sued both New York City Health and Hospitals Corp. ("H+H") along with staffing company Diverse Lynx LLC ("Diverse"), claiming that  "Defendants willfully, regularly and repeatedly failed to pay Plaintiff" consistent with their obligations under the FLSA.

Plaintiff was employed by Diverse from May 2023 through July 2023.  During that period, Diverse placed Plaintiff as an Operational Site Lead at the Humanitarian Emergency Response and Relief Center ("HERRC") located at the Roosevelt Hotel in New York City operated by H+H.  Diverse paid Plaintiff at the rate of $47 per hour.  Diverse was responsible for calculating Plaintiff's compensation, including payment of overtime, consistent with the FLSA.

Plaintiff seeks conditional certification encompassing all persons who worked as an Operations Lead or a HERRC manager at any HERRC operated by H+H on or after June 6, 2022, regardless of whether they were employed by Diverse – Plaintiff Vaca's employer – or another staffing company that placed employees at the HERRCs.  Notably, Plaintiff's declaration and the declaration of former Plaintiff Omar Corominas, state that all of the individuals performing such tasks were employees of staffing companies such as Diverse.  Diverse, as stated in a declaration submitted on its behalf, has individual policies and procedures that directly affected the compensation paid to Plaintiff and three other employees Diverse placed at a HERRC.  But Diverse was not the only staffing company that employed the many employees who were placed at the HERCCs.  Numerous other staffing companies employed the remainder

of the potential opt-in plaintiffs.  These staffing companies had their own policies and practices that affected the compensation of their employees who also were placed at the HERRC sites.

In his Amended Complaint, Plaintiff specifically alleges that "Diverse Lynx willfully, regularly, and repeatedly failed to pay Plaintiff and members of the NYLL Class at least one-and-one-half times their regular rate for hours worked in excess of forty (40) per workweek." Amended Complaint, ¶ 68.  Plaintiff also alleges that "Diverse Lynx has operated under common policies, plans and practices of willfully failing to pay Plaintiffs [sic] and members of the NYLL Class  at least one-and-one-half times their regular rate for hours worked in excess of forty (40) per workweek."  Amended Complaint, ¶ 69.

In his present motion for conditional certification, Plaintiff seeks to place all liability for the alleged violations of the FLSA solely upon H+H.  Despite his allegations in the Amended Complaint, Plaintiff's declaration makes no allegations that the policies and actions of Diverse violated the statute.  The motion's sole focus on H+H, while ignoring any alleged liability by Diverse, is a decision borne of expediency in order to obtain conditional certification.

Plaintiff's motion, which seeks conditional certification of more than a thousand individuals working in 14 separate HERRC locations, is supported by vague and conclusory allegations contained in the declarations submitted in support of the motion.

Plaintiff's declaration claims that he heard "many" of his coworkers complain about the differences in time between what was recorded on the timesheet and the time actually approved by H+H, but only names one co-worker, Justin.  The declaration fails to identify when such complaints were made, and the declaration is silent as to the specific conversations Plaintiff had with Justin.  The same is true with a supporting declaration by Mr. Corominas.  He, too, heard

"many" co-workers make similar complaints.  While he identifies the names of three co-workers that complained about not receiving proper overtime compensation,  he does not identify the specific conversations he had with any of the co-workers.  Nor did he disclose the HERRC each co-worker was assigned to, and when such conversations occurred.  Thus, the factual claims in these declarations are insufficient to meet Plaintiff's burden that he and the potential opt-in plaintiffs were similarly situated.

## II.    FACTS

In support of his motion, Plaintiff filed declarations from himself, his counsel and former plaintiff Omar Corominas. Plaintiff's declaration is dated December 4, 2025.  In his declaration, Mr. Vaca asserts that he worked as an Operational Site Lead for Diverse Lynx, LLC and H+H from May through July 2023.  Vaca Declaration at ¶ 2.  He claimed that he "primarily" worked at a HERRC located at the Roosevelt Hotel but also performed worked a HERRCS located in the ROW Hotel, the Stewart Hotel and the Watson Hotel.  Vaca Declaration at ¶ 3.

The declaration of Omar Corominas is also dated December 4, 2025.  Mr. Corominas states that he worked as an Operation Lead for Tandym Group, LLC and H+H from approximately December 2022 through September 2024.  Corominas Declaration, ¶ 2.  While he "primarily" worked at the HERRC located at the ROW Hotel, he asserts that he also "worked shifts at nearly every other HERRC operated by NYCH+H in the City of New York," including the Roosevelt Hotel and seven other HERRCs.  *Id.* at ¶ 3.

Messrs. Vaca and Corominas used the exact same language to described their primary job duties as Operational Lead: "At the HERRCs, my primary job duties as Operational Lead were to supervise intake operations at the HERRC, ensure the efficient processing of arriving asylum

- 3 -

seekers, coordinate cross-agency staff communication, monitor workflows related to case management and medical intakes, and to receive and attempt to resolve complaints from asylum seekers regarding vendors who operated at the HERRC to provide food and other essentials." Vaca Declaration at ¶ 4, Corominas Declaration at ¶ 5.

The declarations of the Plaintiff and Mr. Corominas contain the following identical language: "Each HERRC I worked at operated on a 12-hour shift schedule.  For each 12-hour shift, there were generally six Operating Leads on duty who performed duties similar to mine.  In addition, there were usually two managers who oversaw the Operational Leads in addition to performing similar duties."  Vaca Declaration at ¶ 5, Corominas Declaration at ¶ 6.

Both declarations provide that "[w]hile working at the HERRCs, I worked alongside Operational Leads and managers who had been provided by other staffing companies" including Diverse Lynx, Tandym, DocGo, Medrite, and Mindlance.  and that "all of us, no matter which staffing agency we were affiliated with, had to record our hours on paper timesheets" provided by NYCH+H at each HERRC.  Vaca Declaration at ¶¶ 8,9, Corominas Declaration at ¶¶ 9-10.

Plaintiff's counsel submitted a declaration in support of Plaintiff's motion, which stated in part that "[a]lthough Omar Corominas was originally named as a Plaintiff in the Amended Complaint, his claims were dismissed without prejudice on or about October 20, 2025 after it was brought to counsel's attention that an arbitration agreement covered his claims.  Declaration of Lucas Buzzard, ¶ 3.

In opposition to Plaintiff's motion, Defendant Diverse submits a declaration from Aneesha Varma, the Director of Client Strategy and Solutions for Defendant Diverse Lynx. Diverse is a staffing company headquartered in Princeton, New Jersey which provides, among

other things, IT and healthcare service staffing services.  Declaration of Aneesha Varma, ¶ 3.  In many cases, Diverse enters into an employment agreement with the job candidate, which provides that Diverse is the employer and sets forth the compensation, generally stated on an hourly basis, that the employee will receive.  *Id.* at ¶ 5.

During the period from June 6, 2022, through the present, Diverse placed a total of four employees with New York City Health and Hospitals Corp. ("H+H") as "Operational Site Leads" in the HERRC centers operated by H+H.  The first candidate was placed in January 2023. *Id.* at ¶ 6.  Diverse no longer has any employees placed in the HERRC program, as the HERRC program has been phased out.  *Id.* at ¶ 7.

Marvin Vaca was an employee of Diverse from May of 2023 through July of 2023. According to his employment contract and payroll records with Diverse, he was paid at a rate of $47 per hour.  *Id.* at ¶ 8.  During the time Mr. Vaca was an employee of Diverse, he was placed with H+H as an "Operational Site Lead" at the Roosevelt Hotel HERRC center.  *Id.* at ¶ 9.

For this assignment, Operational Site Leads, at least as to Diverse, were required to submit their time through an administered portal for tracking and approval purposes.  If he had trouble entering those hours in Wand (the portal), he would tell Diverse the hours he worked and employees of Diverse would enter them on his behalf.  *Id.* at ¶ 10.  While H+H was required to approve the hours Mr. Vaca submitted through the portal, H+H did not know what Mr. Vaca's hourly rate was.  *Id.* at ¶ 14.

As Mr. Vaca's employer, Diverse was responsible for paying his hourly wages and any applicable overtime in accordance with his employment agreement and applicable law.  During the HERRC program, multiple staffing companies placed their own employees with H+H as

Operational Site Leads.  *Id.* at ¶¶ 15-16.

### III.    ARGUMENT

#### A.  Standard for Certification

Under § 216(b) of the FLSA, employees may maintain actions to recover unpaid wages collectively where the employees are "similarly situated" and give consent in writing "to become . . . a party [to the action] and such consent is filed [with the Court]."  29 U.S.C. § 216(b).  The Second Circuit has endorsed a two-step method of certification in an opt-in collective action under the FLSA.  *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010).  At the first step, the Court must determine whether it is appropriate to send notice to potential opt-in plaintiffs, "'who may be similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Id.*

"In exercising its discretion at the conditional certification stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012).  "The plaintiff need only make a 'modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.'"  *Id.*, quoting *Myers*, 624 F.3d at 555.

However, although the plaintiff bears a low burden of proof, "the burden is not nonexistent."  *Ortiz v. Consol. Edison Co. of N.Y., Inc.*, 2025 U.S. Dist. Lexis, at *15 (S.D.N.Y. Sept. 24, 2025) (quoting *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010).  Even at the conditional certification stage, a plaintiff's burden under Section 216(b) cannot be satisfied simply by unsupported assertions, or with conclusory allegations."  *Ortiz*,

2025 U.S. Dist. Lexis 189473, at *15.  Instead, a plaintiff must offer evidence of a factual nexus

between his situation and those of other allegedly similarly situated employees." *Id.*

Where plaintiffs fail to provide sufficient factual allegations, courts routinely deny

conditional certification.  *See Batten v. Citi Gen. Hardware, Inc.*, 2025 U.S. Dist. Lexis 191674,

at *17 (E.D.N.Y. Sept. 29, 2025) (denying conditional certification where "Plaintiff's

submissions are too vague and conclusory, and they are so lacking in detail that the Court cannot

determine whether Plaintiff and any other employees are similarly situated with regards to their

jobs"); *Qing Gu v. T.C. Chikurin, Inc.*, 2014 U.S. Dist. Lexis 53813 (E.D.N.Y. April 17, 2024)

(denying conditional certification for restaurant workers for a local chain of restaurants in ten

separate locations where plaintiffs failed to submit specific factual information to "meet their

modest burden that plaintiffs and the other potential plaintiffs were victims of an unlawful

common plan"); *Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 510 (S.D.N.Y. 2010)

(adopting recommendation that allegations are "too conclusory to establish the requisite factual

nexus").

### B.  Plaintiff Has Failed To Satisfy His Burden That The Potential Opt-Ins And Plaintiff Were Victims of a Common Unlawful Policy

In order to grant Plaintiff's motion, Plaintiff must make "a modest showing that they and

potential opt-in plaintiffs together were victims of common policy or plan that violated the law."

*Winfield*, 843 F. Supp. 2d at 402.  "Specifically, plaintiffs must show a factual nexus between

plaintiff's situation and the situation of potential opt-in plaintiffs."  *Jaworski v. Integra Dev.

Grp., Inc.*, 2021 U.S. Dist. Lexis 228031, at *4 (E.D.N.Y. Nov. 29, 2021).  "Plaintiffs may

demonstrate such nexus though pleadings, affidavits and declarations."  *Id.*

In this case, there is no dispute that all of the potential opt-in plaintiffs were employees of a staffing company, such as Diverse Lynx, and not employees of H+H, a municipal health care delivery system that operated HERRCs during New York City's humanitarian refugee crisis. As noted above, the declarations of the Plaintiff and Mr. Corominas provide that "[w]hile working at the HERRCs, I worked alongside Operational Leads and managers who had been provided by other staffing companies" including Diverse Lynx, Tandym, DocGo, Medrite, and Mindlance. and that "all of us, no matter which staffing agency we were affiliated with, had to record our hours on paper timesheets" provided by H+H at each HERRC. Vaca Declaration at ¶¶ 8,9, Corominas Declaration at ¶¶ 9-10. By stating that "all of us" were "affiliated" with a "staffing agency," Plaintiff concedes that the potential opt-in plaintiffs were, in fact, employed by a staffing company.

Both Plaintiff and Mr. Corominas asserted that each worked a 12-hour shift schedule at the HERRC, and that "For each 12-hour shift, there were generally six Operating Leads on duty" as well as "usually two managers who oversaw the Operational Leads in addition to performing similar duties." Vaca Declaration at ¶ 5, Corominas Declaration at ¶ 6. According to Plaintiff's Amended Complaint, "In addition to the Roosevelt Hotel, there were at least 13 other HERRCs operated by H+H in the City of New York, including the ROW Hotel." *See* Declaration of Lucas Buzzard, Exhibit 1, ¶ 7. Given that, according to Plaintiff, there were generally six Operational Leads on duty on every 12-hour HERRC shift, and that there were "at least" 14 HERRC locations, the number of potential opt-in plaintiffs could well exceed more than one thousand individuals.

- 8 -

Plaintiff's motion, which seeks conditional certification of more than a thousand individuals working in 14 separate HERRC locations, is supported by vague and conclusory allegations contained in the declarations submitted in support of the motion. Plaintiff and Mr. Corominas allege, in identical language, that they were not paid earned overtime because H+H supervisors refused to approve the actual time they submitted in their paper timesheets. Vaca Declaration, ¶¶ 13-17, Corominas Declaration, ¶¶ 12-16.

As to the factual nexus between the Plaintiff's situation and the situation of potential opt-ins, Plaintiff's declaration contains the following allegations:

> The other Operation Leads and managers at the HERCs I worked at had similar 12-hour shift schedules. During my time at the HERCs, I heard many of these co-workers complain about the differences in the time that they recorded on the paper timesheets and the time approved by NYCH+H in Magnit. One such Operations Lead who worked with me at the Roosevelt Hotel was named Justin.

Vaca Declaration, ¶ 18.

Mr. Corominas's declaration is similar to Plaintiff's declaration:

> The other Operation Leads and managers at the HERCs I worked at had similar 12-hour shift schedules and, like me, were frequently required to stay beyond the end of their shifts. During my time at the HERCs, I heard many of these co-workers complain about the differences in the time that they recorded on the paper timesheets and the time approved by NYCH+H. Some of the co-workers I heard complain about this issue were Justin Burton, Christopher Mogrovejo, and Lorenzo Freeman.

Corominas Declaration, ¶ 18.

"Information regarding where or when a plaintiff's observations or conversations occurred . . . is critical in order for the Court to determine the appropriate scope of the proposed

- 9 -

class and notice process." *Chong Suk Lee v. Nails & Spa Together, Inc.*, 2025 U.S. Dist. Lexis 67673, at *10 (S.D.N.Y. April 9, 2025). "Courts in this District have denied conditional certification based on affidavits and declarations that do not refer to specific conversations the plaintiff had with potential collective members." *Id.* (citing *Yang v, Asia Mkt. Corp.*, 2018 U.S. Dist. Lexis 56847 (S.D.N.Y. April 3, 2018), *Sanchez v. JMP Ventures, LLC*, 2014 U.S. Dist. Lexis 14980 (S.D.N.Y. Jan. 27, 2014).

Here, the factual claims in these declarations are insufficient to meet Plaintiff's burden that he and the potential opt-in plaintiffs were similarly situated. Plaintiff's declaration claims that he heard "many" of his coworkers complain about the differences in time between what was recorded on the timesheet and the time actually approved by H+H, but only names one co-worker, Justin, who worked with Plaintiff at the Roosevelt Hotel. The declaration fails to identify when such complaints were made, and the identities, with one exception, of the "many" co-workers that complained. Regarding co-worker Justin, the declaration is silent as to the specific conversations Plaintiff had with Justin, and when such conversations occurred.

Similarly, Mr. Corominas claims that he, too, heard "many" co-workers make similar complaints. He identifies the names of three co-workers, but does not identify the specific conversations he had with each co-worker. Nor did he disclose where the conversations with each co-worker took place, the HERRC each co-worker was assigned to, and when such conversations occurred. Thus, the Court should find that the declarations submitted by Plaintiff have failed to satisfy Plaintiff's burden that Plaintiff is similarly situated to the potential opt-in plaintiffs.

Furthermore, the declaration submitted by Plaintiff is explicitly at odds with the facts as alleged by Plaintiff in his Amended Complaint.  In his Amended Complaint, Plaintiff specifically alleges that "Diverse Lynx willfully, regularly, and repeatedly failed to pay Plaintiff and members of the NYLL Class at least one-and-one-half times their regular rate for hours worked in excess of forty (40) per workweek."  Amended Complaint, ¶ 68.  Plaintiff also alleges that "Diverse Lynx has operated under common policies, plans and practices of willfully failing to pay Plaintiffs [sic] and members of the NYLL Class  at least one-and-one-half times their regular rate for hours worked in excess of forty (40) per workweek."  Amended Complaint, ¶ 69.

In his present motion for conditional certification, Plaintiff seeks to place all liability for the alleged violations of the FLSA solely upon H+H.  Despite his allegations in the Amended Complaint, Plaintiff's declaration makes no allegations that the policies and actions of Diverse violated the statute.  The Court should give the Plaintiff's declaration less weight to the extent the declaration is factually contradicted by the Amended Complaint.

Finally, Plaintiff has presented no affidavits or declarations identifying the staffing companies that employed the potential opt-in plaintiffs, or the policies and practices of these companies.  Indeed, it is entirely possible, if not likely, that non-party staffing companies had their own individual policies, including policies used to calculate their employees' overtime, that may have caused their employees damages under the FLSA.  As a result, Plaintiff cannot satisfy its burden to show that he and the potential opt-on plaintiffs were similarly.

In conclusion, the Court should deny conditional certification as the declarations relied upon by the Plaintiff failed to provide sufficient factual allegations to demonstrate that Plaintiff is similarly situated to the potential opt-in plaintiffs.  *See Chong Suk Lee*, 2025 U.S. Dist. Lexis

67673, at *19 (denying conditional certification where "Plaintiff has not made a sufficient showing to merit the conditional collective certification"); *Batten*, 2025 U.S. Dist. Lexis 191674, at *17 (same); *Qing Gu*, 2014 U.S. Dist. Lexis 53813, at *13 (same).

### C. The Court Should Deny Conditional Certification to "HERRC Managers"

Plaintiff seeks conditional certification of person who "worked as an Operation Lead or a HERRC manager at any HERRC operated by NYCH+H within the City of New York on or after June 6, 2022." Proposed Notice of Pendency of Lawsuit, p.2.

Plaintiff was never employed as a manager at any HERRC location. Nor do Plaintiff or Mr. Corominas provide in their declarations the job duties of a HERRC manager and how the job duties of the managers differ from those of an Operational Lead. Nor were any of the co-workers identified by name in the declarations HERRC managers. Instead, they were all Operations Leads.

In *Qing Gu*, 2014 U.S. Dist. Lexis, at *3, plaintiffs worked as deliverymen and assisted with food preparation in a restaurant. Plaintiffs sought conditional certification for a collective action that included all restaurant employees. *Id.* at *13. The court reasoned that "[a]bsent further explanation or information from plaintiffs, this Court cannot find that all of these employees are similarly situated to plaintiffs." *Id.* The court held that the proposed class was "overly broad" and declined to grant conditional certification of the collective action sought by plaintiffs.

The Court should make the same finding as in *Qing Gu* court and should deny conditional certification to persons who worked as a HERRC manager.

- 12 -

### D.  Plaintiff's Proposed Notice is Inaccurate and Must Be Corrected

"Neither the FLSA nor any court has expressly outlined what form court-authorized notice should take nor what provisions it should contain." *Washington v. Green Trips Inc.*, 2025 U.S. Dist. Lexis 263005, at *21 (E.D.N.Y. Dec. 19, 2025).  "The court has broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions of the FLSA and provide employees with accurate and timely notice concerning the pendency of the collective action." *Id.*

Here, Plaintiff's proposed notice states, under paragraph 1, "Description of the Lawsuit" that:

> Plaintiff filed this lawsuit against Defendants on June 6, 2025, in the United States District Court for the Southern District of New York, Case Number 25-cv-4804.  A portion of the lawsuit alleges a violation of the Fair Labor Standards Act ("FLSA").  With respect to that portion of the lawsuit, <u>Plaintiff alleges that Defendants failed to pay him and other Operations Leads and HERRC Managers one and a half times their regular rate for all overtime hors worked, which are hours worked in excess of 40 per workweek.</u>

Defendants object to the underlined text as inaccurate.  The Amended Complaint does not allege that Diverse was the employer of every potential opt-in plaintiff.  Nor do the facts support this statement, which is overly simplistic and factually inaccurate.

The Court should require Plaintiff to revise the objected-to language.

### E.  The Court Should Not Authorize Notice Via Text Message

Plaintiff requests authorization to send notice to potential opt-in plaintiffs through text messages.  "Courts in this Circuit generally do not authorize notice via text message to an FLSA collective absent a showing by the plaintiff as to the need for such notice." *Ortiz*, 2025 U.S.

- 13 -

Dist. Lexis 189473, at *34.  In order to justify notice by text message, Plaintiff must demonstrate

a reason that notice by such means is necessary.  *See Mendez v. Sweet Sam's Baking Co. LLC*,

2017 U.S. Dist. Lexis 87060 (S.D.N.Y. May 23, 2019).

       Here, Plaintiff has articulated no reason why notice by text message is required in this

case.  Thus, the Court should not authorize notice by text message.

**IV.     CONCLUSION**

       For the reasons stated above, Defendants respectfully request that the Court deny

Plaintiff's Motion for Conditional Certification of an FLSA Collective.

Dated: New York, NY
       January 5, 2025

                    By: /s/ David A. Cohen
                       David A. Cohen
                    THE BASIL LAW GROUP, P.C.
                    125 West 31st Street, Suite 19-B
                    New York, NY 10001
                    davidacohen@rjbasil.com
                    (917) 994-9973
                    (831) 536-1075 (Fax)

                    *Attorneys for Defendants*
                    *New York City Health and Hospitals Corporation*
                    *and Diverse Lynx LLC*

- 14 -

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing opposition complies with the word count limitation stated in Local Rule 7.1(c). Excluding the case caption, tables, and this certification, this brief contains 3911 words. I make this certification using the word count feature of Microsoft Word.

　/s/ David A. Cohen　　　　
　David A. Cohen

- 15 -